

# FILED

## NOT FOR PUBLICATION

FEB 27 2017

### UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

### FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10004 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-00217-LDG-CWH-1 |
| v. | |
| NICHOLAS LINDSEY, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, Senior District Judge, Presiding

Argued and Submitted March 18, 2016
San Francisco, California

Before: GRABER,[**] GOULD, and FRIEDLAND, Circuit Judges.

Nicholas Lindsey appeals his jury conviction and sentence for nine counts of

wire fraud in violation of 18 U.S.C. § 1343 and one count of aggravated identity

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] After oral argument in this case, and our former opinion and memorandum disposition filed June 28, 2016, and after the petition for rehearing or rehearing en banc was filed on August 19, 2016, Judge Graber on January 26, 2017, replaced Judge Noonan on this panel.

theft in violation of 18 U.S.C. § 1028A.  The district court sentenced Lindsey to consecutive sentences of 108 months for wire fraud and 24 months for identity theft.  The court also imposed $2,286,911 in restitution.  Lindsey timely appealed. We have jurisdiction under 18 U.S.C § 3742(a) and 28 U.S.C. § 1291.  In an opinion filed concurrently with this memorandum disposition, we hold that lender negligence in verifying loan application information, or even intentional disregard of the information, is not a defense to fraud, so evidence of such negligence or intentional disregard is inadmissible as a defense against charges of mortgage fraud.  We further hold that evidence of individual lender behavior is not admissible to disprove materiality, but evidence of general lending standards in the mortgage industry is admissible to disprove materiality.  Finally, we hold that Lindsey was not denied the right to present a complete defense.  In this memorandum disposition, we address the remainder of Lindsey's claims, affirming in part as to the convictions, and vacating the sentence and remanding because of our rulings on the obstruction of justice enhancement and the restitution calculation.  We also deny Lindsey's application for bail pending appeal.

1.  In his opening brief, Lindsey contended that there were three sidebar conferences that do not appear in the trial transcript concerning Lindsey's chosen defense, the admission of expert witness testimony by unqualified individuals, and

2

Lindsey's decision to testify on his own behalf. Lindsey argues that the lack of a transcript leaves him unable to prove that he preserved his objections as to the first two issues, subjecting him to a more difficult standard of review on appeal than he would face if his objections were preserved. As to the third issue, Lindsey argues that the lack of transcript prevents him from proving that he was not properly warned of the risks of testifying. Although court reporters are required to record all proceedings in open court, *see* 28 U.S.C. § 753(b)(1), to warrant a reversal a defendant must suffer prejudice from an incomplete transcript. *United States v. Carrillo*, 902 F.2d 1405, 1409 (9th Cir. 1990). After Lindsey's opening brief was filed, the government provided transcripts of one of the previously sealed sidebars. The transcript of this sidebar showed that Lindsey had preserved his objections to the expert witness testimony. Although the transcript does not reveal whether Lindsey preserved his materiality claim, we review Lindsey's materiality claim *de novo*, as opposed to under the more deferential plain error standard, in the opinion filed concurrently with this memorandum disposition. Accordingly, we conclude that Lindsey suffered no prejudice as a result of the court reporter's failure to transcribe these sidebars with respect to preservation of the objections regarding the expert witness and materiality issues. As to the unrecorded sidebar in which the district court canvassed Lindsey regarding his decision to testify, the record is

insufficient to tell whether this omission from the transcript was prejudicial to Lindsey. For example, there is no declaration from Lindsey or his trial attorney regarding whether Lindsey voluntarily testified. This claim is more appropriate for a habeas corpus proceeding, in which Lindsey may supplement the record with evidence if he is able to demonstrate that the omission of this sidebar from the transcript was prejudicial. *See* 28 U.S.C. § 2255(b). His current claim of error from lack of sidebar transcript relating to his decision to testify is therefore denied without prejudice to his renewing that claim if able to do so in a habeas corpus petition properly filed under 28 U.S.C. § 2255.

2. The district court did not abuse its discretion in permitting lenders' employees to testify as lay witnesses rather than as expert witnesses. Under Federal Rule of Evidence 701, a lay witness's testimony must be, *inter alia*, "rationally based on the witness's perception." A lay witness's testimony "based upon personal observation and recollection of concrete facts" satisfies that standard. *United States v. Beck,* 418 F.3d 1008, 1015 (9th Cir. 2005) (quoting *United States v. Allen*, 787 F.2d 933, 935 (4th Cir. 1986), *vacated on other grounds*, 479 U.S. 1077 (1987)). Lindsey has offered no explanation for why the witnesses' testimony, which was based on their personal observations while

4

working for the lenders—rather than on scientific, technical, or specialized knowledge—did not qualify as lay testimony.

3. The district court did not plainly err in permitting testimony regarding prior bad acts. Although the admission of testimony that Lindsey possessed stolen cars or worked without a mortgage license was likely erroneous under Federal Rule of Evidence 404(b), Lindsey has not shown how the admission of this evidence affected his substantial rights, *i.e.*, changed the outcome of the trial. *See United States v. Bracy*, 67 F.3d 1421, 1433 (9th Cir. 1995).

4. The district court did not abuse its discretion in applying the enhancement for abuse of a position of trust. Under U.S.S.G.§ 3B1.3, the district court may increase the offense level by two if the "defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." This enhancement is appropriate for defendants who possess professional or managerial discretion. U.S.S.G. § 3B1.3, cmt. n.1; *see also United States v. Laurienti*, 731 F.3d 967, 973 (9th Cir. 2013) ("[T]he presence or lack of professional or managerial discretion represents the decisive factor in deciding whether a defendant occupied a position of trust." (internal quotation marks omitted)). Lindsey was employed as a mortgage loan officer and a team

leader for his mortgage group, and he used that position of authority to perpetrate the scheme.

5. The district court did not abuse its discretion in applying the sophisticated means enhancement. Under U.S.S.G. § 2B1.1(b)(10)(C), the district court may increase the offense level by two for crimes of "sophisticated means," defined as an "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," including, for example, soliciting operations in a separate jurisdiction. *Id.* § 2B1.1, cmt. n.9(B). This enhancement applies when the criminal scheme is extensively planned and is more sophisticated than a routine offense. *United States v. Aragbaye,* 234 F.3d 1101, 1108 (9th Cir. 2000), *superseded by statute on other grounds as recognized by United States v. McEnry*, 659 F.3d 893, 899 n.8 (9th Cir. 2011). Lindsey was convicted of operating a scheme in which he solicited straw buyers from other states, paid them for their identities, and controlled the mortgaged properties to generate income. This scheme was extensively planned and more sophisticated than a routine mortgage fraud.

6. The district court found that Lindsey perjured himself during trial and applied an obstruction of justice enhancement, but did not explain at sentencing why the perjury was material or willful. Accordingly, we must vacate the sentence

6

and remand for the district court to fully explain its reasoning on the enhancement. *See United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103 (9th Cir. 2007) (per curiam).

7. We also vacate the amount of restitution and remand for further proceedings. The Presentence Report and testimony at sentencing suggests that the victims in this case are the financial institutions that suffered losses at the time of foreclosure, as opposed to the lenders who made the original loans. The correct restitution calculation in this circumstance begins with the amount the victim paid for the loan and/or collateral, and subtracts the amount recouped from the resale of the collateral at foreclosure. *See United States v. Luis*, 765 F.3d 1061, 1067 (9th Cir. 2014); *see also Robers v. United States*, 134 S. Ct. 1854, 1856 (2014). However, Agent Burris' testimony regarding the calculation of restitution is not entirely clear. We cannot discern from the record whether the victims purchased loans or collateral properties, or both. Also, it is not clear whether Agent Burris began her calculations with the original loan amount, or with the amount the second financial institution paid for the loan and/or collateral. If Agent Burris' calculations began with the original loan amount, then the restitution calculation was erroneous. Accordingly, we remand for the district court to recalculate the amount of restitution in accordance with *Luis* and *Robers*.

7

8. Lindsey has also filed a motion for bail pending appeal. *See* Fed. R. App. P. 9(b).[1] The district court found that Lindsey had not shown by clear and convincing evidence that he was not a danger to the safety of any other person or the community, or that he was not likely to flee. *See* 18 U.S.C. § 3143(b)(1)(A). We review these findings for clear error, *see United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985), and conclude that the district court's conclusions were not clearly erroneous.

In *United States v. Reynolds*, we held that "danger may, at least in some cases, encompass pecuniary or economic harm." 956 F.2d 192, 192 (9th Cir. 1992) (order). This is an appropriate case in which to conclude that the economic or monetary harms caused by Lindsey show his dangerousness. Lindsey ran an elaborate mortgage fraud scheme that targeted vulnerable and impoverished individuals and convinced them to act as straw buyers for properties in Las Vegas. He also stole their identities and purchased other properties without their knowledge. When the scheme caused foreclosures on the properties, Lindsey profited while lenders lost money and the straw buyers were left with ruined credit.

---

[1] Although on appeal Lindsey erroneously labeled this a motion pursuant to Fed. R. App. P. 9(a), which describes the standard for release before judgment of conviction, we construe it as a Fed. R. App. P. 9(b) motion, as this is a post-conviction motion.

This conduct shows that Lindsey is a danger to individuals and the community, and that the district court's findings were not clearly erroneous. We reject the challenge on appeal to the district court's denial of bail pending appeal.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**